ASSUMPSIT.

# Gant *vs* Shelton.

APPEAL FROM THE CHRISTIAN CIRCUIT.

*Case 114.*     *Fraud. Rescission of contracts. Practice.*

*May 13.*     CHIEF JUSTICE EWING delivered the opinion of the Court.

The case stated and judgment of Circuit Court.

THIS is action of assumpsit, for the price of a horse purchased by Gant, of Shelton, in the Fall of 1840, at $100, "to be paid for when Van Buren should get the electoral vote of Virginia for President."

The defendant pleaded three pleas: 1st. In substance, that the horse was unsound, and his unsoundness known to the plaintiff, and fraudulently concealed from the defendant, whereby he was deceived, and that the horse was, in reasonable time after the discovery of the fraud, tendered back to the plaintiff. 2d. That the contract of purchase, by subsequent agreement between the parties, was rescinded, and it being inconvenient, at the time, for the plaintiff to take possession of the horse, the defendant was to keep him, for a while, for the plaintiff, which he did, and afterwards tendered him to the plaintiff. 3d. That the contract was rescinded and the horse, in reasonable time, tendered to the plaintiff, in pursuance of the contract of rescission.

Upon these pleas issues were taken, and a verdict and judgment for the plaintiff, and the defendant has appealed to this Court.

There are numerous palpable errors in this record, some of which we will notice.

A motion for a new trial may be made at any time during the term at which the verdict is rendered, in the absence of any *established* rule of Court to the contrary.

The Circuit Court refused to hear a motion for a new trial, suggesting as the only reason of the refusal, that it was not made in time. We know of no rule of law in this State which precludes a party, who conceives himself injured by the finding of the jury, from moving the Court for a new trial at any time during the term at which the verdict is found.

We would not say that the Court might not establish a rule of practice, which would require such motions to be

made in some reasonable time, while the evidence and steps taken in the cause were fresh in the recollection of the Court and counsel: yet such rule, if made, should be spread upon the records of the Court, or promulgated in some form, so as to apprise litigants or their counsel of its existence. No such rule is shown, in this record, to have been made or promulgated in any form.

The judge precedes his signature to the exceptions, spreading the grounds for a new trial, the instructions given or refused, and the evidence in the cause, on the records, by the remark that "no exceptions to the instructions were *taken* at the time they were given." This omission does not cure the error if error was committed to the prejudice of the defendant, nor does it preclude him from his right to ask a re-consideration of those instructions, on his motion for a new trial, and in case it is not granted, to have those that were given as well as those that were refused *fairly* and *fully* preserved upon the record, so as to enable him to have the errors of the Circuit Court corrected in this Court, if any has been committed to his prejudice. Justice should never be entangled in the cobwebs of technical forms.

Parties have a right to be heard here as well as in the Court below, and should be indulged in every facility to have the whole case, and all the points decided, fairly presented to this Court.

We might not deem it our duty to reverse for these irregularities if injustice had not been done the defendant, and errors committed to his prejudice in the progress of the trial.

The evidence in the record strongly conduces to prove that the horse was diseased with the spavin at the time of, and before the sale, and that the plaintiff knew of it, and had refused before to sell him to others, because of his unsoundness, giving that as the reason of his refusal; that he sold him to the defendant, not only concealing from him his unsoundness, but by artifice used means to make the false impression upon the mind of the defendant that the swelling which was perceived was the effect only of a recent injury; that in reasonable time after the character of the unsoundness was discovered, and before

GANT
*vs*
SHELTON.

The parties are not precluded from excepting to opinions of the Court, given in the progress of a trial, 'tho these exceptions may not have been taken or mentioned at the moment when given.

<div style="margin-note">GANT<br>*vs*<br>SHELTON.</div>

the result of the Virginia election was known, the defendant informed the plaintiff of the unsoundness and insisted on his taking the horse back, which was agreed to by him, and the contract rescinded, but the horse was left with the defendant to be kept without charge, upon the suggestion of the plaintiff that he could not take the horse at that time, as he was then going below Hopkinsville, his residence being about twenty miles on the opposite side; that in some few weeks afterwards the plaintiff demanded pay for the horse, from the defendant; he refused to pay, stating that the horse was unsound, and procured the horse to be brought out and tendered him to the plaintiff, who refusing to receive him he was turned out in the street in his presence.

<div style="margin-note">Instructions given by Circuit Ct.</div>

Upon this evidence five instructions were asked by the plaintiff's counsel and given, two were asked by the defendant's counsel and refused. The first instruction given affirms it as a legal principle that the contract of rescission was a naked agreement, without consideration, and could not effect a rescission of the contract unless the horse was tendered back and accepted at the time and before the parties separated.

<div style="margin-note">An agreement by parol to rescind a contract for the purchase of personal property, is binding, as a contract of purchase, without actual delivery in the one case or re-delivery in the other.</div>

We cannot perceive why a contract to rescind may not be as binding on the parties, without delivery at the time, as a contract to sell. It has a similar consideration to support it. In the contract to sell, the one party promises to pay the price, the other agrees to let him have the horse at the price agreed on. The mutual promise of each is the consideration of the promise on the other side, if even the contract be executory. But it is said that in a bargain of sale, if the terms are agreed on and the bargain is struck, the contract of sale is complete and the sale is absolute, without payment or delivery, and the property and risk of the goods vest in the buyer, yet the buyer does not acquire a right to the possession of the goods until he pays or tenders the price. So in the contract of rescission, as we conceive, which is, in effect, an agreement by the vendee to let the vendor have the horse back, upon his agreement to surrender his demand for the price, and if the contract was executory, the mutual agreement on each side is a sufficient consideration to support

a promise on the other. But the bargain of rescission being struck, and terms agreed on, the property in the horse re-vests in the vendor, and is at his risk, and he has the right to the possession also, and may demand the horse at any time, and sue for him if he is not given up, as he has no money to pay, the rescission being, in effect, a surrender of his demand for the price. But independent of the binding efficacy of the contract, a moral obligation rested upon the vendor to take back the horse, if, as the proof in this record tends to establish, he cheated the vendee in the original sale.

The second instruction is also misleading, as it is based on the failure of the defendant to tender back the horse in reasonable time, without qualification or regard to the agreement to rescind, and it is also erroneous in requiring the tender to be made in reasonable time after the *sale*, when such tender should be made in reasonable time only after the discovery of the fraud, even if no agreement to rescind had been made.

*A return of property purchased, where there has been a fraud in the sale, to be effectual to operate a rescission of the contract, must be in a reasonable time after the discovery of the fraud.*

The third instruction is also misleading. If it be true, as an abstract proposition, applicable to palpable defects seen, examined, and understood by the vendee, yet a false representation or concealment, with respect to the nature or recent character of the disease whereby the vendee is deceived, is fraudulent and gives him the right to impeach the contract.

*'Tho there may be a defect apparent in property sold, yet if the character of that defect is misrepresented, it is fraudulent.*

The fourth instruction is erroneous, for the reason given in the first branch of the objections taken to the second instruction. And for the same reason, as well as for the reason given in the latter branch, is the fifth instruction misleading and erroneous.

The defendant's counsel moved the Court for the following instructions, which were refused:

1st. "That if they believed, from the evidence, that the plaintiff and defendant agreed to rescind the contract about the horse, and the defendant, in a reasonable time thereafter, offered to return the horse to the plaintiff, that they should find for the defendant."

2nd. "That although they may believe that the defendant examined the horse, still if they believed that the injury or disease required skill to be discovered, and was

in consequence thereof undiscovered, they believing that the plaintiff knew of the disease, they must regard it as a fraudulent concealment, and find for the defendant."

It is apparent, from the reasons already given, that the first instruction should have been given. Indeed if the contract of rescission was complete, the right of property and right of possession of the horse being in the plaintiff, it was his business to apply for the horse, and not the business of the defendant to tender him, and the more especially if the horse was left in the latter's possession to keep for the former.

The second instruction might also have been given, subject however to the qualification that they should believe that the horse was tendered back in reasonable time after the discovery of the fraud.

The judgment of the Circuit Court is reversed, and cause remanded, that a new trial may be granted without the payment of costs, and the appellant is entitled to his costs in this Court.

*B. & A. Monroe* for appellant.